**LOCAL 309, UNITED FURNITURE WORKERS OF AMERICA, C.I.O., et al. v. GATES et al.**

Civ. No. 876.

District Court, N. D. Indiana, Hammond Division.

Jan. 6, 1948.

Oliver Switzer, of South Bend, Ind., for plaintiffs.

Cleou H. Foust, Atty. Gen. of Indiana, Winslow Van Horne, Deputy Atty. Gen. and Robert Hollowell, Jr., Chief Counsel, of Indianapolis, Ind., for defendants.

SWYGERT, District Judge.

Local 309, United Furniture Workers of America, C.I.O., hereafter referred to as the Union, called a strike at the Smith Cabinet Manufacturing Company, Incorporated, located in Salem, Indiana, on September 4, 1947. The strike has continued ever since. The events leading up to the strike and the reasons for its being called are not important to a determination of the issue presented here.

Affidavits introduced by the defendants indicate that acts of violence were committed on non-striking employees during the latter part of September. Other similar unlawful acts are shown to have occurred on October 13th and December 17th. Some of the perpetrators of these acts were seen on the picket line at other times. The Mayor of Salem testified by affidavit that

after he had received reports from the officers of the Smith Manufacturing Company of acts of violence at or near the company's plant he called the Governor of the State of Indiana for police help and thereafter members of the Indiana State Police were sent to Salem.

On September 9th the Smith Manufacturing Company filed a complaint against the Union in the Circuit Court of Washington County, asking for a restraining order and a temporary injunction. The court immediately issued a restraining order without notice and on September 13th, after a hearing, issued a temporary injunction against the Union and its members to restrain the defendants in that action from mass picketing, from arming themselves while on the picket line with any kind of weapons, such as knives or clubs, and from threatening with violence and from interfering with those who wished to enter the premises of the Smith Manufacturing Company.

Since October 16th the Union has held weekly meetings in the court room of the Washington County Court House. The affidavit of the judge of that court was introduced into evidence. This affidavit is to the effect that no representative or member of the Union has ever requested permission from him for the use of the court room as a meeting place and that he has never granted such permission.

Affidavits of the three county commissioners were also introduced. These are to the effect that no request was ever made to the Board of County Commissioners for permission to use the court room for meetings of the Union and that no such permission was ever granted. This evidence is not disputed.

It appears that there is no other available meeting place in Salem suitable in size to hold these meetings of the Union and that other organizations such as the Veterans of Foreign Wars and the Indiana Farm Bureau Cooperative meet in the Washington County Court Room to conduct their organization and business affairs.

The evidence is that members of the Indiana State Police have attended all but one of these weekly meetings of the Union since the latter part of October. The Salem Town Marshal and the Sheriff of Washington County or his deputies have been in attendance at various times. On one occasion a brother and also a friend of one of the state police officers attended a meeting, although they were not invited and neither of them were members of the Union.

The evidence shows that the officers of the Indiana State Police sit among the Union members, but neither take part in nor actively interfere with the meetings. However, some of the state police have taken notes during the discussions. The members of the state police who have attended these meetings have made reports of this fact to their superiors, indicating that they have attended with the knowledge and implied approval of the defendants, if not at their express direction.

The evidence definitely establishes the fact that the presence of the state police has kept the members of the Union from openly discussing the matters which relate to purposes of the meetings, for example, the affairs of the Union and the strike it is conducting. It is further shown that little actual business is accomplished when the state police are in attendance because the plaintiffs feel restrained from discussing their union problems and affairs at such times. A witness for the plaintiffs testified that reports covering the gathering of funds to support the strike and their disbursement to union members are not read or discussed when the state police officers are present. Another witness testified as follows: "We can't speak our minds while the police are there." The plaintiffs' undisputed evidence is that during the strike the state police have maintained friendly associations with the officials of the Smith Manufacturing Company, but that their attitude toward the strikers has been unsympathetic and unfriendly. The state police officers have been requested repeatedly by the Union representatives and members to leave the meetings and to state their reasons for being there. The officers have refused to leave as requested and also have

refused to give any reason for their presence.

On the hearing of this motion several reasons were advanced by the defendants for the presence of the members of the Indiana State Police at the meetings. One reason given is that the Judge of the Washington County Circuit Court requested their presence. Significantly, the Judge gave no testimony to that effect in his affidavit and one officer whose presence is complained of testified that he knew of no such request. This same officer testified that the reason for their attendance is to make certain that the meetings are open to all who wish to attend. Another reason, mentioned by the Prosecuting Attorney of Washington County, is that some among the Union membership have prior criminal records and that it is felt that the police should be in the court room during these meetings to preserve order and protect the public property. The fourth and final reason given is that because of the violence which has occurred previously and a continuing threat of similar disturbance, it is necessary for the police to attend these meetings to prevent further disorder growing out of the strike situation. On this point, Officer Harold Lewis, a witness for the defendants, testified in effect that he had never heard any suggestions of violence at the union meetings and that he believed that no acts of violence had emanated from them.

■ The defendants have questioned the right of the Union as such to invoke the jurisdiction of the court. In Hague v. C.I.O., 307 U.S. 496, at page 514, 59 S.Ct. 954, at page 83 L.Ed. 1423, the Supreme Court held that only natural persons are entitled to the privileges and immunities of Section 1 of the Fourteenth Amendment and that only the individual plaintiffs could maintain the suit. On this point, I can see no difference between the case at bar and the Hague case, and for that reason, the case is dismissed as to Local 309, United Furniture Workers of America, C.I.O., but is allowed to stand as to the individual plaintiffs and the other members of the Union for whom the individual plaintiffs have brought this action in a representative capacity.

The defendants contend that "the plaintiffs have not shown a clear legal right to use the court room for a private meeting to the exclusion of peace officers and the public." This contention was partially disposed of on the defendants' motion to dismiss. The court said in denying the motion to dismiss: "* * * * in 1919 the General Assembly of Indiana passed an act which authorizes the board of commissioners of a county to lease for definite periods of time to private persons and corporations such parts of county buildings as are not needed for the public business. Ind. Acts, 1919, ch. 13, p. 41; Ind.Stat.Ann. (Burns' 1933) § 26-1805. * * * And it seems logical and practical that where the express terms of this statute permit the board of county commissioners to rent a part of the county buildings for private use and for a definite period of time, the Board may grant permission or license, with or without compensation, for a part of the building to be used privately and temporarily by persons or organizations—consonant, of course, with a paramount right of the county officials and the public to use the building for the transaction of public business. This lesser power is by fair intendment included in the broad authority to lease the county buildings for a definite period of time."

The evidence is undisputed that the plaintiffs have obtained no prior and positive permission from the Washington County authorities to use the county court room for their meetings. On the other hand, the inference can be drawn that the plaintiffs have had tacit permission to use the court room for such purpose from the fact that the county authorities have allowed these meetings to be held in the Court House since October 16 without doing anything to prevent them.

■ Whether the plaintiffs have permission to use the county court room as a meeting place is not a determining factor. Regardless of whether the plaintiffs have permission, tacit or positive, or no permission at all, the important fact is that these meetings have been and are being held in the court room at a time when it is not being used as a court room. The legality and

right of the plaintiffs to use the court room at such times for meeting purposes is not a question to be determined in this action. That is properly a matter to be settled by the Washington County authorities and the plaintiffs. The defendants, as the responsible principals of the members of the Indiana State Police whose presence at these meetings the plaintiffs protest, cannot question in this action the right of the plaintiffs to use the court room. That lies wholly within the province and prerogative of the Washington County authorities, who are not parties to this action. Thus, the question of the plaintiffs' right to use the court room is purely collateral to the issue presented here.

The question for decision in this case is whether the Indiana State Police have the right to attend the meetings of the plaintiffs and to take notes of what transpires at them.

■ The plaintiffs claim that by attending these meetings, the Indiana State Police have invaded their rights of freedom of speech and freedom of assembly. It is clearly established by the evidence that the presence of the state police officers has prevented the Union members from discussing freely the matters they wish to take up. It is true that the police officers have not actively prevented the plaintiffs from conducting their meetings as they desire or from speaking if they wished. But the evidence is that their presence and their taking of notes have had the same effect as if there were active interference. It is indicated that this has come about because of the belief that the state police have taken a role as partisans in the labor dispute between the Union and the Smith Manufacturing Company. This feeling of restraint, frustration, and interference within the minds of the Union members, engendered by the presence of the state police, appears to be a natural result flowing from the conduct of the police officers in their relations with the striking employees and the employer. The evidence discloses that this feeling is neither imaginary nor inconsequential.

■ It is no longer open to question that the Federal Constitution protects and secures the rights of all persons to speak freely and to assemble peaceably for any lawful purpose. One of the latest pronouncements of this proposition of constitutional law by the United States Supreme Court is contained in Hague v. C.I.O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

The court said at page 519 of 307 U.S., at page 965 of 59 S.Ct.: "It has been explicitly and repeatedly affirmed by this Court, without a dissenting voice, that freedom of speech and of assembly for any lawful purpose are rights of personal liberty secured to all persons, without regard to citizenship, by the due process clause of the Fourteenth Amendment."

■ This right to speak freely and to assemble peaceably for any lawful purpose without interference by either state or federal government officials ordinarily is thought of in connection with speaking and assembling in a public forum. However, there is nothing in the Constitution or in the cases decided under the First Amendment which limit these rights to such circumstances. The freedom and liberty to express ourselves privately and to hold private assemblies for lawful purposes and in a lawful manner without governmental interference or hindrance is protected as much by the First Amendment as the right to do so publicly. Limitation in this regard would be such a serious encroachment upon our liberties and freedoms as to render the pre-eminent rights guaranteed by the First Amendment nugatory in large areas of legitimate action.

The Supreme Court has recently reasserted the test for determining the extent of justifiable governmental interference with the right of assembly. Thomas v. Collins, 323 U.S. 516, at page 530, 65 S.Ct. 315, at page 322, 89 L.Ed. 430. That case involved an assembly of people discussing employer-employee relations, and there the court said: "* * * Any attempt to restrict those liberties (secured by the First Amendment) must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. * * * Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must

have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly."

The pertinent questions of fact in this case are: Are these lawful assemblies? Has there been any public interest threatened by clear and present danger as a result of these meetings? Have the state police restrained or interfered with these assemblies in any manner?

The defendants' evidence fails to link the meetings with the acts of violence which have occurred and which have grown out of the strike situation. In fact, the evidence is to the contrary. No violence has stemmed from or been the outgrowth of these meetings. There have been no disturbances or disorders at the meetings. The plaintiffs' purpose has been to discuss the conduct of their strike and to act upon their individual and collective problems growing out of the dispute with their employer.

■ The evidence that the state police have restrained and hampered those who have thus met in lawful and peaceful assembly has been discussed in preceding paragraphs. Unless it can be said that the state police have a right to be present because of the nature of the meeting place, it is an inevitable conclusion that they have overstepped their lawful authority in asserting a right to attend these meetings. As has been pointed out, the plaintiffs' right to use the Court Room is a matter between the county authorities and the plaintiffs. Without deciding the point, it would appear that the proper county officials may impose any proper conditions on the use of the court room, such as that any meeting held there be of public rather than of private character, or they may refuse altogether its use by private individuals and organizations. But the State Police have no right to usurp the authority of the local officials or vicariously to assume powers not vested in them.

■ If the county authorities allow the County Court Room to be used for other purposes than as a court room, then when it is so otherwise used, it ceases to be a court room as such. It then is similar to any other space in the Court House. If the proper county authorities permit or allow the court room to be used for private meetings at times when the court is not in session, the state police have no greater right to be in the court room during such private meetings than they have a right to be in any other part of the building. The usual association of police officials with the court room does not continue when the room usually devoted to court purposes is temporarily devoted to use by a private assembly of citizens.

On the other hand, if the county authorities should have official business to perform in the space allowed to be used temporarily for a private meeting place, it seems reasonable that they should have a preferred right to use that space, even during the time it is being utilized for a private meeting. Furthermore, if the proper county officers should deem it necessary in order to safeguard the public property that the sheriff or the court house custodian be present when private individuals or organizations use a part of the court house for meetings, their authority ought not be questioned.

The temporary injunction sought in this action is not to enjoin the county officials from the exercise of their lawful powers. If it were, it would overreach and interfere with the officials of the local government in the proper performance of their official functions.

It is with some reluctance that the Court reaches the conclusion that a temporary injunction ought and must be granted under the facts and law of this case. That reluctance arises from three separate circumstances. One is that the scene of the controversy lies outside the Northern District of Indiana. The second is that the violence and illegal acts which have occurred and grown out of the strike would indicate that the police officers should have a wide latitude of action to preserve peace and order. The third is that the place of assembly in-

volved is a court room to which police officials ordinarily should and do have access.

■ However, it may be pointed out first that the court has jurisdiction over the parties and the subject matter and therefore the controversy must be resolved despite its location outside of the territorial jurisdiction of the court. Secondly, the acts of violence which have occurred and have grown out of the strike situation are not condoned by the granting of this temporary injunction. But, as has already been stated, there is no showing that this disorder and violence has had any connection with the meetings involved in this action. And thirdly, the question here transcends the technical aspects of the fact that the meetings have been held in the room in the Washington County Court House usually devoted to the Circuit Court of that County. That coincidental use of the court room by the plaintiffs and the respected authority of the Indiana State Police cannot cloak with lawfulness an unwarranted invasion of the plaintiffs' rights guaranteed by the Constitution of the United States. The guarantees of freedom and liberty embodied in the First Amendment must be secured and protected by the courts whenever they have met interference without justification.

For the reasons stated the temporary injunction is granted.

### Findings of Fact

The facts set forth in the opinion above, as supplemented by the stipulation of the parties herein, filed December 23, 1947, are by reference made and are to be deemed the findings of fact prescribed by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

### Conclusions of Law

1. The court has jurisdiction over the parties herein.

2. Jurisdiction of the subject matter of the controversy is vested in this court by Title 28 U.S.C.A. § 41 (14).

3. The plaintiff Local 309, United Furniture Workers of America, C.I.O. has no standing in court to complain of the deprivation of civil rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

4. The defendants, through the Indiana State Police and under color of state authority, have deprived the individual plaintiffs of their constitutional rights of freedom of speech and freedom of assembly in violation of Title 8 U.S.C.A. § 43.

5. The individual plaintiffs are entitled to a temporary injunction restraining the defendants, and each of them, from directing, permitting, or allowing any member of the Indiana State Police to attend any membership meeting held by the plaintiffs in the Court House of Washington County, Indiana.

### Decree

This cause having come on for hearing and the issues therein having been tried before the court without a jury and the evidence of all the parties hereto having been heard, and the court having duly made findings of fact and conclusions of law,

Now it is ordered, adjudged and decreed as follows:

1. The defendants, and each of them, are hereby temporarily enjoined and restrained from directing, permitting, or allowing any member of the Indiana State Police to attend any membership meeting held by the plaintiffs in the Court House of Washington County, Indiana.

2. This injunction shall become effective on and after the plaintiffs have posted a bond as security, in compliance with Rule 65 (c) of the Federal Rules of Civil Procedure, the amount of said bond to be set at a hearing for that purpose at ten o'clock Thursday morning, January 8, 1948.

3. Jurisdiction of this cause is retained for the purpose of giving full effect to this decree, and for the purpose of making such further and other orders and decrees in modification of this decree as may be deemed necessary upon further and sufficient showing.