**Tim MILLIRON and Local 191, National Association of Government Employees, Plaintiffs,**

**v.**

**LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Defendant.**

Civ. A. No. C94–0538–L(H).

United States District Court,
W.D. Kentucky,
At Louisville.

Nov. 16, 1994.

---

**1.** *See* 28 U.S.C. § 1447(d) (denying appellate review of a remand order based on lack of subject matter jurisdiction).

Herbert L. Segal, J. Christopher Sanders, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, KY, for plaintiffs.

Schuyler J. Olt, Lawrence J. Zielke, Charles F. Merz, Pedley, Ross, Zielke & Gordinier, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Plaintiffs' motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Plaintiffs claim that Defendant terminated Plaintiff Milliron's employment because of his participation in union activities as Metropolitan Sewer District President of the Local 191, in violation of his First Amendment right of association. Plaintiffs ask the Court to reinstate Plaintiff immediately to his position as an employee at MSD and to enjoin Defendant from interfering with the free association rights of Local 191 and its members.

This case addresses the delicate interplay between Plaintiff Milliron's First Amendment right of free association and Defendant's legitimate right to impose appropriate employee discipline and control. The Court cannot find that any other court has considered these same issues under such difficult facts. The Court's decision reflects that difficulty and the importance of each party's rights under these circumstances. For the reasons set forth herein, the Court will grant in part Plaintiff Milliron's request for a preliminary injunction.

## I.

Defendant hired Plaintiff as a truck driver in June 1992. He became president of the Local 191 union in May, 1994. Plaintiff contends that Defendant terminated him on October 31, 1994 because of his participation and leadership in union activities.

As a union leader, Plaintiff actively pursued employee interests in grievances and lawsuits against Defendant. When the MSD Board rejected a mediator's recommendation to reinstate union member R.G. Thompson in July, 1994, Plaintiff filed on the union's behalf, a class action lawsuit challenging the termination, on August 31, 1994. On October 10, 1994, Plaintiff filed an employee grievance when MSD Maintenance Director David Johnson turned off the telephone located in the Local 191 office on the company premises. On October 17, 1994, Plaintiff filed yet another lawsuit alleging that Defendant and David Johnson, in particular, had a policy of intimidating employees to dissuade them from accepting union representation at disciplinary conferences. Plaintiff also requested a meeting with Kentucky Labor Cabinet mediator Larry Roberts to discuss Defendant's

intimidation of union members that occurred during the investigation of the grievance.

Plaintiff asserts that Defendant exhibited hostility to his union activities by treating him differently than other employees in similar circumstances. For example, he says that on August 10, 1994, Defendant imposed a one-day disciplinary suspension on Plaintiff for his involvement in a verbal altercation with two other employees, but took no action against the two others. On October 19, 1994, Defendant management employee Kenny Morton, following David Johnson's orders, ejected Plaintiff from the MSD building on Seventh Street while Plaintiff was conducting union business with another manager's permission. On October 26, 1994, David Johnson ejected Plaintiff from a class of potential trainees for promotion, while other employees of Plaintiff's same or lower classification were permitted to remain. Plaintiff filed employee grievances about each event, describing his treatment as harassment of the union and union officials.

Up to this point, the facts are susceptible to various conclusions about who was responsible for the building animus between Plaintiff and various MSD officials. Plaintiff initiated many of the disputes, some of questionable validity. Defendant responded with numerous petty slights of its own. The Court need not establish blame in order to conclude that bad blood on both sides affected Plaintiff's relationship with Defendant.

What happened next was all too predictable. A seemingly innocent series of events exploded out of control, culminating in Defendant terminating Plaintiff. On October 28, Defendant held a Halloween costume party for its employees in its main offices at 3:30 in the afternoon. In preparation for the party, Plaintiff purchased a "Fred Flintstone" costume during his lunch break. Though he tried on the costume after his lunch break, no one complained. His supervisor ended the workday around 2:40 that afternoon. The shift does not end until 4:00; however, employees occasionally change into their personal clothes and relax earlier in the afternoon after completing their duties for the day. Plaintiff returned to the 7th Street facility, changed out of his uniform and into his costume.

Defendant management employee Walter Strecker saw Plaintiff in the "dress" and demanded that he change back into his uniform. When Plaintiff protested, Strecker threatened Plaintiff with a written warning, which never was issued. Plaintiff was never able to explain his reason for wearing the costume. Both Strecker and Plaintiff overreacted. Plaintiff assumed that Strecker was harassing him unfairly. Although Strecker unquestionably was within his rights by asking Plaintiff to change clothes, the manner in which he did so was unfortunate. The misunderstanding escalated into an argument and a test of wills. If the matter had ended at this point, neither Plaintiff's termination nor this lawsuit would have followed.

The following Monday, Defendant held an investigatory hearing about Plaintiff's conduct. Plaintiff continued to argue with the managers that he was being harassed and unfairly treated. As it turns out, Plaintiff's continued refusal to bend to Defendant's will was the crucial circumstance in Defendant's decision to terminate his employment. The same day, Defendant notified Plaintiff that he was discharged for insubordination and violation of Defendant's Code of Conduct for Employees.

Plaintiff then met with Strecker, Johnson, and Gordon Holsclaw. While discussing the termination decision, Johnson told Plaintiff that Plaintiff had taken the wrong approach towards his union activities. Johnson also said that Plaintiff should not have singled out Johnson in the class action grievance. Holsclaw and Johnson agreed that Defendant previously had not encountered so much trouble with the union. No previous union presidents had filed two lawsuits against the company as Plaintiff had. Soon after, Plaintiff brought this cause of action. He and Local 191 now seek a preliminary injunction.

## II.

Local 191 is not a proper plaintiff in this case. An association such as a union has no standing to raise the issue of deprivation of freedom of speech because that constitutional guarantee is personal in nature and

can only be urged by individual persons. *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939) (holding that only natural persons are entitled to the privileges and immunities of Section 1 of the Fourteenth Amendment); *International Ladies Garment Workers' Union, AFL et al. v. Seamprufe Inc. et al.,* 121 F.Supp. 165, 167 (E.D.Okla.1954); *Local 309, United Furniture Workers of America, C.I.O., et al. v. Gates, et al.,* 75 F.Supp. 620, 623 (N.D.Ind. 1948); The First Amendment violations alleged here are personal to Milliron. Therefore, the Court recognizes jurisdiction over Milliron, the individual plaintiff, but dismisses Local 191, the association plaintiff.

### III.

■ To determine whether Plaintiff's claim for a preliminary injunction is proper, the Court must consider four factors: (1) whether the plaintiff has a substantial probability of success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985). The factors are not prerequisites that must be satisfied; rather, they are considerations to be balanced that guide the discretion of the court. *Id.* at 1229; *In re Eagle–Picher Industries, Inc.,* 963 F.2d 855, 859 (6th Cir.1992) (citation omitted).

■ To succeed on the merits, Plaintiff must show that his union-related association or speech is constitutionally protected and that it was a substantial or motivating factor in Defendant's decision to fire him. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). His speech or association is protected if it addresses a matter of public concern and the employer has no overriding state

interest in efficient public service that would be undermined by the speech or association. *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 1687–88, 75 L.Ed.2d 708 (1983); *Boals v. Gray,* 775 F.2d 686, 692 (6th Cir. 1985). Plaintiff has shown that his association with the union involves a matter of public concern because his actions as union president extend beyond internal labor relations at MSD. His union association addresses the public issue of the rights of employees to organize and thus bargain from a position of strength with management.

■ The burden then shifts to Defendant to show that it has an overriding state interest in efficient public service that would be undermined by Plaintiff's union association. Ultimately, Defendant must show that Plaintiff's termination would have taken place absent the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Meyers v. City of Cincinnati,* 934 F.2d 726, 729 (6th Cir.1991); *Ratliff v. Wellington Exempted Vil. Sch. Bd. of Ed.,* 820 F.2d 792, 795 (6th Cir.1987). Defendant argues that Plaintiff was fired because of his insubordinate behavior, not his exercise of his First Amendment rights. As an employer, Defendant correctly contends, it must have the authority to discipline its employees and thus manage the conduct of its business.

■ The Court must balance the particular competing interests raised by Plaintiff's First Amendment claim. *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691–92. This balance requires full consideration of the government's interest, as an employer, in the effective and efficient fulfillment of its responsibilities to the public, weighed against the employee's interests, as a citizen, in commenting upon matters of public concern. *Id.* at 142, 103 S.Ct. at 1687.[1] In striking the balance,

---

1. This balancing accommodates the public employer's roles as a provider of public services and a government entity bound by the constraints of the First Amendment. *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987).

On the one hand, public employers are employers, concerned with the efficient function

of their operations; review of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions. On the other hand, "the threat of dismissal from public employment is ... a potent means of inhibiting speech." *Pickering v. Board of Education,* 391 U.S. 563, 574, 88 S.Ct. 1731, 1738, 20 L.Ed.2d 811 (1968). Vigi-

courts should consider the manner, time, and place of the employee's expression and the context in which the dispute arose.[2] *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899.

## IV.

 In this case, the balance favors Plaintiff's interests in union-related association and speech. The right of an employee to espouse, lead, and carry out lawful union activities is a paramount public concern. Accordingly, an employer who disciplines an employee solely in retaliation for his membership in and support of a union violates that employee's First Amendment rights. *Boals*, 775 F.2d at 693. That is not our case. Defendant's actions, however, were substantially the result of hostility toward the activities of the union and Plaintiff, its president. Indeed, discharge seems to be an extreme sanction for one incident of insubordination. Though Plaintiff's over-sensitivity to anti-union sentiment and his rank insubordination and belligerence at the investigatory hearing clearly entitle Defendant to impose some punishment, the incident in all likelihood would not have escalated into a termination of employment had another employee been involved or had Plaintiff not actively pursued union claims. Defendant's displeasure with Plaintiff's aggressive leadership of the Local 191 substantially contributed to that result.

The Court notes, however, that Defendant MSD has a strong and legitimate interest in disciplining its employees, regardless of whether those employees are union members or union leaders. Unquestionably, Defendant has a right to impose sanctions here; perhaps for Plaintiff's violation of the employee dress code, but especially for his vehemently insubordinate and uncooperative behavior toward his superiors. The Court's decision today does not diminish that right. Had Defendant merely suspended Milliron, even for a significant period of time, the result here would be different.

In striking the proper balance here, the Court must fairly consider the circumstances in their full context. In this light, it becomes clear that but for Plaintiff's union association and the hostility surrounding it on all sides, he would not have been terminated. Defendant and its managers exhibited insensitivity and hostility toward Plaintiff's union activities on several occasions before Plaintiff was fired. In the Court's view, the comments of Defendant's officials in the aftermath of Plaintiff's termination further demonstrate their bias and its effect on their actions. Because these specific circumstances escalated the dispute and tipped the balance on Defendant's ultimate action against Plaintiff, Plaintiff's interest in freedom of association outweighs Defendant's interest in such an extreme disciplinary action. Consequently, Plaintiff has a substantial likelihood of succeeding on the merits of this case.

 The first element being satisfied, we must then consider whether the injunction will save the plaintiff from irreparable injury. An award of monetary damages and reinstatement to his position after a trial on the merits is not an adequate remedy for a deprivation of First Amendment rights. The loss of First Amendment rights, even for minimal periods of time, constitutes irreparable injury sufficient to justify injunctive relief. *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). Therefore, Plaintiff has satisfied this element as well.

 The relief Plaintiff seeks would not harm others. No one has alleged that Plaintiff's union advocacy or his behavior upset the working environment at MSD through either physical violence or verbal disruption. The Court has reaffirmed Defendant's right to impose appropriate employee sanctions. Accordingly, voiding the sanction of termination would not unfairly harm other employees or managers or MSD.

---

lance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because supervisors disagree with the content of the employee's speech. *Id.*

2. In this case, the Court's balancing is unusually difficult because Plaintiff's union association affected the dispute, but did not cause it initially. Moreover, Plaintiff's association with the union did not affect Defendant's legitimate goals.

Lastly, the public interest would be served by issuing a preliminary injunction in this case. Clearly the public has a strong interest in protecting employees' freedom of speech and association in the workplace. Unions are particularly important because they advocate employee views in negotiations with company management. Employees must be free to participate in union activities without fear of reprisal or discriminatory treatment from their employers.

By its action today, the Court acts only to void Defendant's action that exceeded the constitutional balance. Plaintiff's reinstatement is one immediate consequence of the Court's action. Another is Defendant's right to reconsider the disciplinary proceedings against Plaintiff. The Court has acknowledged Defendant's right to impose a more appropriate sanction. Finally, the Court finds no need or justification for any other injunctive relief that Plaintiff has requested.[3]

The order accompanying this memorandum opinion will grant Plaintiff Milliron's motion for a preliminary injunction and dismiss Plaintiff Local 191 from the case.

### ORDER

This case is before the Court on Plaintiffs' motion for a preliminary injunction. The Court having thoroughly reviewed the matter, having issued a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff Milliron's motion for a preliminary injunction reinstating him to his position at MSD be SUSTAINED, subject to the qualifications set forth in the Memorandum Opinion. All other relief requested is denied.

IT IS FURTHER ORDERED that the complaint of Plaintiff Local 191 is DISMISSED with prejudice.

3. Plaintiff had requested that the injunction be posted at MSD's offices.