753 F.2d 1354
 1985-1 Trade Cases 66,374
 CHRISTIAN SCHMIDT BREWING COMPANY and Stroh Brewery Company,
Inc., Defendants-Appellees,
v.
G. HEILEMAN BREWING COMPANY, INC., H-P Acquisition Corp.,
and Pabst Brewing Company, Plaintiffs-Appellants,
 No. 85-1008.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 16, 1985.
Decided Jan. 17, 1985.
 
 William A. Sankbeil, Detroit, Mich., Michael L. Denger, Sutherland, Asbill & Brennan, Washington, D.C., Willis B. Snell, Grady Avant, Jr., Detroit, Mich., Michael Fischer, Washington, D.C., David E. Beckwith (argued), Milwaukee, Wis., for plaintiffs-appellants.
 William M. Saxton, Richard A. Rossman, Butzel, Long, Gust, Klein, & Van Zile, Detroit, Mich., Donald T. Bucklin, Washington, D.C., George A. Avery (argued), Joseph A. Tate (argued), Philadelphia, Pa., for defendants-appellees.
 Before ENGEL, KEITH and MARTIN, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 This case is before the court as an expedited appeal from an order entered by the United States District Court for the Eastern District of Michigan granting a preliminary injunction. For the reasons set forth below, the order of the district court is affirmed.
 
 
 2
 The facts underlying this appeal are set forth in the opinion of the district court. See Christian Schmidt Brewing Co. v. G. Heileman Brewing Company, Inc., 600 F.Supp. 1326, at 1327-28, (E.D.Mich. 1985). For the purpose of this appeal the essential facts can be briefly summarized. On December 6, 1984, appellants G. Heileman Brewing Company, Inc. and H-P Acquisition Corporation (hereinafter Heileman) entered into an agreement to acquire the common stock of appellant Pabst Brewing Company (hereinafter Pabst). Also on December 6, Heileman entered into a separate agreement with another brewing company, S & P Company, to sell certain of the Pabst assets to that company in order to avoid possible antitrust objections by the United States Department of Justice.
 
 
 3
 On December 17, 1984, the appellees, Christian Schmidt Brewing Company (hereinafter Schmidt) and Stroh Brewery Company (hereinafter Stroh), filed suit in the United States District Court for the Eastern District of Michigan alleging various antitrust violations and seeking declaratory and injunctive relief. On December 27, 1984, the district court entered a preliminary injunction and supplemented its order with a January 4, 1985 Memorandum Opinion. In granting the injunction the trial court found inter alia that there was substantial probability that the proposed merger would lessen competition for malt beverages in a twelve-state upper Midwest market. See at 1328. The trial court also found that the public interest would be served by preliminarily enjoining the proposed acquisition, since a full trial on the merits could be held expeditiously. See at 1329-30.
 
 
 4
 The appellants filed a notice of appeal on December 27, 1984, and on January 3, 1985, filed with this court emergency motions for a stay and for an expedited appeal. Hearings on the expedited appeal were held in this court on January 16, 1985.
 
 
 5
 The standard of review on appeal from the grant or denial of a preliminary injunction is limited to a determination of whether the district court abused its discretion. American Motors Sales Corp. v. Runke, 708 F.2d 202, 205 (6th Cir.1983); Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir.1982); Mason County Medical Association v. Knebel, 563 F.2d 256, 261 (6th Cir.1977). A district court abuses its discretion when it relies on clearly erroneous findings of fact, Brandeis Machinery & Supply Corp. v. Barber-Greene Co., 503 F.2d 503, 505 (6th Cir.1974), or when it improperly applies the law or uses an erroneous legal standard. United States v. School Dist. of Ferndale, 577 F.2d 1339, 1351 (6th Cir.1978).
 
 
 6
 There are four factors to be considered in determining whether the grant or denial of a preliminary injunction was an abuse of discretion: (a) the likelihood of success on the merits of the action, (b) the irreparable harm which could result without the relief requested, (c) the impact on the public interest, and (d) the possibility of substantial harm to others. Tate v. Frey, 735 F.2d 986, 990 (6th Cir.1984); Mason County Medical Association, supra. Although these four factors must be considered in assessing a request for a preliminary injunction, the four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity. Friendship Materials, Inc., supra; Roth v. Bank of Commonwealth, 583 F.2d 527, 537 (6th Cir.1978) cert. dismissed 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).
 
 
 7
 An appellate court in reviewing the propriety of a preliminary injunction should refrain from the unnecessary comment on the evidence or review of the merits of the case since the case has yet to be heard in full on the merits. Tate v. Frey, supra; Brandeis Machinery & Supply Corp., supra. This is especially true in this antitrust case where the rights of the parties can be better determined upon full proof of the facts.[1]
 
 
 8
 Heileman and Pabst contend that the district court erred in finding a substantial likelihood of success on the merits since Schmidt and Stroh lacked standing to bring this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. Sec. 26, to prevent and restrain a threatened violation of Section 7 of the Clayton Act, 15 U.S.C. Sec. 18. (hereinafter section 7). Heileman and Pabst rely upon Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), to argue that Stroh and Schmidt lack standing to assert a claim under section 7 because they have failed to make an adequate preliminary showing of antitrust injury. Heileman and Pabst argue that section 7 was intended to protect competition and not competitors. Heileman and Pabst urge that competition in the brewing industry will remain healthy and strong notwithstanding the merger because excess production capacity exists in the industry and decreased transportation costs enable brewers to ship their beer greater distances. Appellants also suggest that competition could be enhanced by the merger because the merged corporation could compete with Stroh and the two dominant leaders in the beer industry, Anheuser-Busch, Inc. and Miller Brewing Company. In addition, appellants claim that even if the proposed merger should somehow enable the merged companies to increase prices, this would only enure to the benefit of Schmidt and Stroh who would thereby have the advantage of operating within the resultingly higher price structure.
 
 
 9
 The district judge considered Brunswick carefully and concluded that Stroh and Schmidt had alleged antitrust injury and therefore had standing to assert their claim against Heileman and Pabst.
 
 
 10
 The harm to plaintiffs, especially Schmidt, threatened by this merger is precisely an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 489 [97 S.Ct. 690, 697, 50 L.Ed.2d 701] (1977). Schmidt has shown that there is a substantial probability that if the proposed merger is accomplished and competition between Pabst and Heileman is eliminated, then the combined firm would be able to target its competitive efforts on Schmidt and other small brewers. As a result of this merger, plaintiffs' ability to wholesale and distribute their products may be impaired, and ultimately, Schmidt's ability to survive in this industry of giants may be in question. This is exactly the sort of injury the antitrust laws were intended to prevent.
 
 
 11
 At 1331 n. 5.
 
 
 12
 Heileman and Pabst challenge Judge Feikens' finding as clearly erroneous. There is, however, at least some tentative evidence that the proposed merger could have an adverse effect upon the ability of Schmidt, other small brewers, and in some instances Stroh to wholesale and distribute their products--an ability which is essential to their survival. We are obliged to acknowledge that this antitrust injury would not be sufficient were the injury merely to result from increased efficiency gained by appellants from the merger which would make the marketing of their own product more attractive and economically feasible to wholesalers and distributors. The proofs before Judge Feikens, however, suggest that a more predatory and anticompetitive consequence may be threatened. Stroh and Schmidt allege that the economic power of the merged corporation would induce distributors to drop the smaller brewers as customers. This power is gained not from the marketplace, but from their dominance in it. Hence, there is evidence in the record to support the finding of Judge Feikens that Schmidt and Stroh have standing.
 
 
 13
 Stroh and Schmidt have alleged the necessary antitrust injury and have supported the allegation with affidavits. Stroh and Schmidt have thus satisfied the requirements of Brunswick as our court instructed in Langenderfer, Inc. v. S.E. Johnson Company, 729 F.2d 1050 (6th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 510, 83 L.Ed.2d 401 and --- U.S. ----, 105 S.Ct. 511, 83 L.Ed.2d 401. In Langenderfer, the court stated
 
 
 14
 ... Instead, Brunswick requires that Langenderfer's injury result either from a lessening of competition due to the acquisitions or from "anticompetitive acts made possible" by the acquisitions. One of Langenderfer's theories at trial was that the acquisitions eliminated the competitive pressures of the acquired companies and enabled defendants to engage in other monopolistic acts such as monopolistic pricing, profit squeezing, and predatory bidding. If true, this alone satisfies the requirement of Brunswick.
 
 
 15
 729 F.2d at 1058.
 
 
 16
 A higher threshold standard would be inconsistent with the prophylactic purpose of Section 16 of the Clayton Act. Section 16 allows any person to sue for injunctive relief against threatened loss or damage by a violation of the antitrust laws. Section 16 is designed to stop anticompetitive behavior in its incipiency. As such, the courts have recognized "a lower threshold standing requirement for section 16 than for section 4." Schoenkopf v. Brown & Williamson Tobacco Corp., 637 F.2d 205, 210 (3rd Cir.1980). We realize of course that although there is a lesser threshold standard, plaintiffs must nonetheless make a sufficient showing of potential or threatened antitrust injury to meet the customary requirements for a grant of preliminary injunctive relief. We believe that the trial judge did not err in concluding that plaintiffs had met that threshold requirement.
 
 
 17
 Heileman and Pabst also contend that the district court erred in making the preliminary determination that the relevant geographic market is a twelve-state Upper Midwest region. Heileman and Pabst claim that the district court relied on outdated evidence. Appellants contend that the relevant geographic market is a national market as evidenced by national brewers Anheuser-Busch, Miller, and recently the Adolph Coors Company.
 
 
 18
 Although appellants have presented substantial data and evidence which is worthy of careful consideration, we are unable to find that the district court erred in making the preliminary determination that the relevant geographic market for beer is the traditional regional market. The district court's reasoning and reliance upon the affidavits of Professor Greer is adequately set forth in his opinion. We find that the district court's determination of the relevant geographic market was not clearly erroneous.
 
 
 19
 We again emphasize, as did the trial judge, the tentative nature of any holdings which must necessarily be made, albeit with great care, at this stage of the proceedings. We only conclude that based upon the limited record before the trial judge, the trial judge did not abuse his discretion in granting preliminary injunctive relief. The parties will have a full opportunity to present their cases in the expedited trial on the merits which has been promised to commence on March 28, 1985.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The district court properly avoided making too firm a judgment on the potential outcome of this difficult antitrust case. The factual circumstances of this controversy are indeed complex and will only be clarified by a full trial on the merits