Ronald NEWSOM; Hasan Sharif; Eddie
J. McMillan; and Donald Wolverton,
Plaintiffs–Appellees,

v.

Steve NORRIS, Commissioner; Michael
Dutton, Warden; and David Hindman,
Defendants–Appellants.

No. 88–5071.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1988.

Decided Oct. 19, 1989.

Ronald Newsom, Nashville, Tenn., pro se.

Neal McAlpin, Jr., argued, pro bono, Nashville, Tenn., for plaintiffs-appellees.

Hasan Sharif, Nashville, Tenn., pro se.

Eddie J. McMillan, Nashville, Tenn., pro se.

Donald Wolverton, Memphis, Tenn., pro se.

W.J. Michael Cody, Atty. Gen., Will Tomlinson, Stephanie Reevers, Asst. Attys. Gen., argued, Office of the Atty. Gen. of Tenn., Nashville, Tenn., for defendants-appellants.

---

* Hon. Lawrence P. Zatkoff, United States District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The named appellees were "inmate advisors" in the Tennessee State Penitentiary, who assisted prison inmates in defending themselves before the Prison Disciplinary Board. They had been appointed to the positions by the Warden of the Tennessee State Penitentiary, Michael Dutton.

Before KEITH and KRUPANSKY, Circuit Judges, and ZATKOFF, District Judge.*

KRUPANSKY, Circuit Judge.

This is an appeal from an order issued of the United States District Court for the Middle District of Tennessee granting preliminary injunctive relief in favor of Ronald Newsom (Newsom), Hasan Sharif (Sharif), Eddie McMillan (McMillan) and Donald Wolverton (Wolverton), the named appellees in this action (referred to collectively as the appellees),[1] ordering the named appellants[2] to reinstate the appellees to their former positions as inmate advisors. The appellants have appealed from the district court's order awarding preliminary injunctive relief.

The record disclosed the following facts. On January 28, 1987, Warden Dutton (Dutton) did not reappoint the appellees as inmate advisors, when their respective terms expired on February 15, 1987, pursuant to the authority vested in him by the Policies of the Department of Corrections,[3] which states in pertinent part that:

Inmate advisors will be appointed for a six month period the first two months being probationary. The inmate advisors *may be reappointed at the discretion of the Warden* or Associate Warden of Treatment upon recommendation of the classification committee and with the consent and continued interest of the inmate.

Policy 502.01, Section B-2 (emphasis added).

On March 9, 1987, the appellees commenced the instant action in the United States District Court for the Middle District of Tennessee, wherein they charged

2. The named appellants in this action are Steve Norris, the Commissioner of the Tennessee Department of Corrections; Michael Dutton, the Warden of the Tennessee State Penitentiary; and David Hindman, a Correctional Officer and Chairman of the Disciplinary Board at the Tennessee State Penitentiary.

3. The State of Tennessee has adopted statewide policies which regulate the activities and conduct of prison officials. *See, e.g. Beard v. Livesay,* 798 F.2d 874, 878 (6th Cir.1986).

First Amendment free speech infringements alleging that appellants had conspired to and had deprived them of their constitutional rights to continue to serve as inmate advisors in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, in retaliation for complaints which they had filed with the Warden criticizing the performance of David Hindman (Hindman) who was the Chairman of the Disciplinary Board. The appellees argued that historically wardens had routinely reappointed any inmate advisor who expressed a desire to continue service in the position and that, as a consequence of existing custom and practice, the warden had vested an implied property right in the appellees to continue indefinitely in the position of inmate advisors if they so elected. Appellees requested declaratory and injunctive relief, as well as monetary and punitive damages, from the appellants.

On March 9, 1987, the trial court referred the controversy to a Magistrate for initial consideration and for submission of Recommended Findings of Fact and Conclusions of Law. On March 26, 1987, the Magistrate conducted a hearing and thereafter, on May 28, 1987, issued his Report and Recommendation in which he concluded that the appellees had been denied reappointment in retaliation for written and oral complaints which had criticized Hindman's performance as Chairman of the Disciplinary Board. Having decided that the appellees had satisfied the requirements necessary to support a preliminary injunction, the Magistrate recommended that the appellants be ordered to reinstate the four named appellees to their positions as inmate advisors pending the resolution of the action on its merits.

Although the appellees' complaint had not requested class certification, nor alleged training inadequacies of the Disciplinary Board members or inmate advisors, the Magistrate sua sponte addressed these issues which had not been joined by the pleadings and the evidence and on his own initiative recommended that "the District Court require the appellants to file a plan with the Court for a training program to be conducted by lawyers for members of the prison disciplinary board and inmate advisors at the Tennessee State Penitentiary as soon as practicable and to allow only such trained persons to serve in these administrative proceeding [sic]." *Magistrate's Report and Recommendation,* at 15.

The appellants timely filed objections to the magistrate's proposed findings of fact, conclusions of law and recommendations to the district court. On December 7, 1987, however, the district court adopted *in toto* the magistrate's report and recommendations, after a *de novo* review of the appellees' request for preliminary injunctive relief. The appellants thereupon filed a timely appeal from the district court's order granting preliminary injunctive relief.

When examining the appellees' motion for preliminary injunctive relief, the district court was required to balance the following four factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir. 1982). In reviewing the District Court's decision addressing appellees' request for injunctive relief, this court must determine if the district abused its discretion in acting as it did. *Lowary & Wyatt v. Lexington Local Bd. of Educ.,* 854 F.2d 131, 134 (6th Cir.1988); *Christy v. City of Ann Arbor,* 824 F.2d 489, 490 (6th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *Black Law Enforcement Officers Ass'n v. City of Akron,* 824 F.2d 475, 479 (6th Cir.1987); *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d 1390, 1396 (6th Cir.1987). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly ap-

**374**

plies the law or uses an erroneous legal standard." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985); *accord Lowary & Wyatt,* 854 F.2d at 134; *Christy,* 824 F.2d at 490–91; *Black Law Officers Ass'n,* 824 F.2d at 479. In the instant appeal, the appellants have contended that the district court erred in its factual conclusion that the appellees were likely to succeed on the merits of their claim, and in concluding that appellees would suffer irreparable harm should the injunctive relief be denied.

■ The appellants have urged that the appellees had no constitutionally protected property interest in continued employment as inmate advisors. The appellants are correct. Existing precedent confirms that "[t]he Constitution does not create a property or liberty interest in prison employment ... [and that] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Ingram v. Papalia,* 804 F.2d 595, 596–97 (10th Cir.1986) (quoting *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)); *see also Adams v. James,* 784 F.2d 1077 (11th Cir.1986); *Gibson v. McEvers,* 631 F.2d 95 (7th Cir.1980); *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.), *cert. denied sub nom. Altizer v. Young,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 391 (1978). *See generally Kentucky Dep't of Corrections v. Thompson,* 490 U.S. ——, ——, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In the case at bar, the appellees have failed to demonstrate that they had any cognizable property interest created under Tennessee law in continuing to serve as inmate advisors. The appellees have argued that longstanding custom and practice which provided that any prisoner who elected to continue serving as an inmate advisor would be reappointed to the position and that the expectation of reappointment constituted a property interest cognizable under the Constitution. The argument is less than persuasive.

To prove an "expectation" interest under state law, the appellees must demonstrate that there was a "mutually explicit understanding" between themselves and the appellants. Existing precedent has recognized that "prison officials' policy statements and other promulgations" can create constitutionally protected interests in favor of the prisoners. *See, e.g., Kentucky Dep't of Corrections,* 490 U.S. at ——, 109 S.Ct. at 1908–09; *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986); *Franklin v. Aycock,* 795 F.2d 1253, 1260 (6th Cir.1986); *Bills v. Henderson,* 631 F.2d 1287, 1291 (6th Cir.1980). The official policy pronouncements enacted by the State of Tennessee at issue in the instant appeal clearly indicate that "inmate advisors *may* be reappointed at the *discretion* of the Warden." Policy 502.01, Section B–2 (emphasis added). Because these policy guidelines vested complete discretionary authority in the warden to appoint or reappoint inmate advisors, they did not serve to provide the appellees with a constitutionally protected interest.

> The regulations at issue here, however, lack the requisite relevant mandatory language. They stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met.... [T]he regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials.

*Kentucky Dep't of Corrections,* 490 U.S. at ——, 109 S.Ct. at 1910–11 (footnotes omitted).

■ In the instant case, the appellees failed to demonstrate that the appellants had agreed to waive the expressed policy guideline which vested unlimited discretion in the warden to appoint and/or reappointment inmate advisors for any or no reason. Consequently, any practice or policy relied upon by the appellees did not rise to the level of a "mutual" and "explicit" understanding, and was merely a "unilateral expectation" on the part of the appellees insufficient to create a recognized property interest. To constitute a constitutionally protected property right, "the interest must rise to more than 'an abstract need or

desire,' ... and must be based on more than 'a unilateral hope'...." *Kentucky Dep't of Corrections*, 490 U.S. at ——, 109 S.Ct. at 1908 (citations omitted); *see also Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 602 n. 7, 92 S.Ct. 2694, 2700 n. 7, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Accordingly, the appellants are correct in asserting that the appellees failed to prove the existence of a property interest in remaining as inmate advisors which was cognizable under state law.

■ Although the appellees did not demonstrate a cognizable property interest in their position as inmate advisors, they did however have a cognizable liberty interest in remaining in their respective positions free from impermissible interference. It is well recognized that it is constitutionally impermissible to terminate even a unilateral expectation of a property interest in a manner which violates rights of expression protected by the First Amendment.[4]

Even though [plaintiff] was merely a probationary employee, and even if she could have been discharged for any reason or for no reason at all, she may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression.

4. The dissent has suggested that the issue of the prison inmate advisors' First Amendment rights to freedom of expression is not properly before this court because that issue was neither raised by the parties nor decided by the district court. *See, e.g., Adams v. James*, 784 F.2d 1077, 1080 (11th Cir.1986) ("It is important that we review the case presented to the district court rather than a better case fashioned after the district court's order."). An examination of the record, however, demonstrates that this concern is misplaced.

In his Report and Recommendation, the Magistrate expressly made the following factual observations and legal conclusions:

Plaintiffs allege, in essence, that they were terminated as inmate advisors *in retaliation for their objections* to the conduct of disciplinary and administrative segregation proceedings at TSP by the Chairman of the Disciplinary Board.

The Magistrate finds that there is a substantial likelihood that *the plaintiffs' complaints* about Hindman *were the primary reason for their terminations* by Dutton....

.... [R]atification of Hindman's conduct and Dutton's failure to follow departmental policies gives rise to the Magistrate's finding that the plaintiff's non-reappointment was not ordinary prison adminstrative matters, but rather *Dutton's decision to terminate plaintiffs was based upon their legitimate complaints* about Hindman's conduct.... Such actions by Dutton are consistent with Hindman's *statements that if the plaintiffs objected to his handling of disciplinary proceedings, they would lose their jobs.*

In the Magistrate's view, the evidence in this case to date, [sic] is substantial that the *plaintiffs were terminated because of their complaints about Hindman's conduct* of administrative and disciplinary proceedings at the Tennessee State Prison. Dutton stated that at the time of their terminations, he did not question the performance of any plaintiff and that he had no complaints from inmates or institutional staff, other than Hindman, about the plaintiff's [sic] performance of their inmate advisor duties. Therefore, it appears to the Magistrate that *but for the plaintiffs' complaints and confrontations* with Hindman, *they would have remained in their positions. Magistrate's Report and Recommendation of May 29, 1987,* at 1, 6 & 10 (emphasis added). The district court expressly adopted the Magistrate's Report and Recommendation, specifically commenting that "[w]ith respect to the likelihood of success on the merits, the Court agrees with the Magistrate's conclusion that the proof introduced at the hearing held on April 10, 1987, indicates that there is a *substantial likelihood that the plaintiffs' complaints* about the actions of David Hindman, Chairman of the TSP Disciplinary Board, *were the primary reasons for their terminations* by Dutton." *District Court's Memorandum of December 9, 1987,* at 1–2 (emphasis added).

The above quoted factual and legal conclusions constituted a quintessential formulation of a finding by the magistrate and the district court that the plaintiffs' constitutionally protected rights to freedom of expression had been violated by the defendants in the case at bar. The fact that the court below did not specifically cite to relevant case law relating to the impermissible infringement of such First Amendment rights of expression is irrelevant, since the court made specific findings sufficient to support an abridgement of the prison inmate advisors' constitutional rights under the facts of this case. *See, e.g., Eddings v. Oklahoma*, 455 U.S. 104, 113 n. 9, 102 S.Ct. 869, 876 n. 9, 71 L.Ed.2d 1 (1982) ("Our jurisdiction does not depend upon citation to book and verse.") (citing *New York ex rel. Bryant v. Zimmerman*, 278 U.S. 63, 67, 49 S.Ct. 61, 63, 73 L.Ed. 184 (1928)).

*Rankin v. McPherson,* 483 U.S. 378, 383–84, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *accord Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Perry,* 408 U.S. at 596–97, 92 S.Ct. at 2696; *Cale v. Johnson,* 861 F.2d 943, 949–51 (6th Cir.1988); *Ryan v. Aurora City Bd. of Educ.,* 540 F.2d 222, 225 (6th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Existing case precedent indicates that a failure to reappoint an individual to a position is equally impermissible, even where there was no cognizable expectation of continued service, if reappointment was denied because of the individual's exercise of First Amendment rights.

Thus, the respondent's lack of a contractual or tenure "right" to re-employment for the 1969–70 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker*[, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Keyishian v. Board of Regents*[, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) ]. We reaffirm those holdings here.

*Branti v. Finkel,* 445 U.S. 507, 515, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980) (quoting *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972)); *accord Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Parate v. Isibor,* 868 F.2d 821, 827, 828–29 (6th Cir.1989); *Littlejohn v. Rose,* 768 F.2d 765, 769–70 (6th Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570. (1986); *Stern v. Shouldice,* 706 F.2d 742, 747 (6th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983); *Orr v. Trinter,* 444 F.2d 128, 134 (6th Cir.1971),

*cert. denied,* 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972).

"In *Branti* [*v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) ], the [Supreme Court] determined that a failure to rehire the plaintiffs was a discharge even though, in form, the terms of their appointments [had] expired.... Thus, the court simply held that what occurred in *Branti* was in fact still a dismissal. On Day 1 plaintiffs had a job, and on Day 2 they were to be terminated from that job." *Messer v. Curci,* 881 F.2d 219, 221 (6th Cir.1989) (en banc); *accord id.* ("Similarly, all the cases that have applied the *Branti* doctrine to failures to rehire have involved situations where a worker was informed of non-reappointment at the end of a term of employment, thus causing an actual discharge.").

Certainly, the appellees had no contractual right or contractually based expectation of reemployment. It does not follow, however, that the refusal to reemploy them did not violate their constitutional rights. The Supreme Court has consistently recognized that "even though a person has no 'right' to a valuable governmental benefit ... [the government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."

*McConnell v. Adams,* 829 F.2d 1319, 1323 (4th Cir.1987) (quoting *Perry,* 408 U.S. at 597, 92 S.Ct. at 2697), *cert. denied sub nom. Virginia ex rel. State Board of Elections v. Kilgore,* —— U.S. ——, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); *see also Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125, 128 (1st Cir.1987); *Furlong v. Gudknecht,* 808 F.2d 233, 238 (3rd Cir. 1986); *Horton v. Taylor,* 767 F.2d 471, 473 n. 1 (8th Cir.1985); *McBee v. Jim Hogg County,* 730 F.2d 1009, 1015 (5th Cir.1984) (en banc).

◼ In *Cale,* this court recently observed that the "egregious abuse of governmental power," in the form of "retaliation [against a prisoner by prison officials] for exercising his first amendment right to

register a complaint about" inadequate prison policies was sufficient to state a claim for deprivation of First Amendment rights in violation of 42 U.S.C. § 1983, 1985(3) and 1986. *Cale*, 861 F.2d at 951 (A probation officer's unlawful, malicious and intentional deprivation of a mother's liberty interest in the custody of her children stated a cognizable claim for the violation of her constitutional rights under section 1983.) (citing *Vinson v. Campbell*, 820 F.2d 194, 201 (6th Cir.1987)).

> The lack of entitlement to a particular privilege does not free prison administrators to grant or withhold the privilege for impermissible reasons. The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe.
>
> . . . .
>
> [P]rison officials may not retaliate against an inmate for exercising a constitutionally protected right. Since prisoners retain some first amendment rights, a claim that prison officials retaliated for the exercise of a personal first amendment right states a claim.

*Adams v. James*, 784 F.2d 1077, 1080, 1082 (11th Cir.1986); *see also Franco v. Kelly*, 854 F.2d 584 (2nd Cir.1988) (plaintiff stated a cause of action under § 1983 against state prison officials who acted in retaliation for the prisoner's exercise of constitutional rights); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir.1986) (death threat made by prison guard in retaliation for prisoner's attempt to exercise first amendment right of access to federal courts states a cause of action under § 1983); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir.1985) (claim that prison officials transferred him to another prison in retaliation for prisoner's exercise of his first amendment rights to free speech states a cause of action).

Additionally, the appellants have challenged the magistrate's factual findings

that the appellees would have been reappointed to their positions as inmate advisors but for their complaints about the performance of Hindman as the Chairman of the Disciplinary Board. In reviewing the factual findings underlying a grant of injunctive relief, this court can disturb such findings only if it finds them to be "clearly erroneous." *See* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d 825, 828–29 (6th Cir.1988), *aff'd*, —— U.S. ——, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 467 (6th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). In the instant case, the district court adopted the magistrate's findings of fact, which were anchored in credibility assessments of both the appellees and the appellants. The magistrate and the court assigned greater credibility to the testimony of the appellees, and accordingly adopted their version of the facts.

"When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings [concerning] ... the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512; *accord Sewell v. Jefferson County Fiscal Court*, 863 F.2d at 466–67. "[C]redibility determinations are reviewed

under the clearly erroneous standard because the trier of fact has had the 'opportunity to observe the demeanor of the witnesses.'" *Connaughton*, —— U.S. at ——, 109 S.Ct. at 2696 (quoting *Bose Corp.* 466 U.S. at 499–500, 104 S.Ct. at 1959), *aff'g* 842 F.2d at 828–29. Having failed to effectively challenge the magistrate's credibility evaluations, the appellants have not demonstrated that the factual findings adopted by the district court were clearly erroneous. *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1512; *Watson v. Fort Worth Bank & Trust*, 798 F.2d 791, 798–99 (5th Cir.1986), *vacated and remanded on other grounds*, 487 U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

■ Additionally, the appellants have challenged the district court's conclusion that the appellees would suffer irreparable injury if injunctive relief were not accorded them because monetary damages and reinstatement subsequent to a trial on the merits would provide an adequate remedy for any injuries suffered by the appellees. The argument ignores the district court's conclusion that the irreparable injury to the appellees resulted from impinging their First Amendment rights, and not from any denial of property interests or monetary damage.

The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.

> It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.

*Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion of Brennan, J.); *id.* at 374–75, 96

S.Ct. at 2690 (Stewart, J., concurring in judgment) (termination from employment for political reasons violated First Amendment rights; injunctive relief properly accorded under such circumstances).

The dissent has suggested that the Supreme Court's admonition in *Elrod*, that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod*, 427 U.S. at 373, 96 S.Ct. at 2690, is inapplicable to the case at bar since the prison inmate advisors have already been terminated from the positions. The majority of federal circuit courts, however, have concluded that an individual, who has been subjected to direct and intentional retaliation for having exercised the protected constitutional right of expression, continues to suffer irreparable injury even after termination of some tangible benefit such as employment.

> "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981).... So too, direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury. *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir.1978) (transfer of employee allegedly for exercise of First Amendment rights; "[v]iolations of first amendment rights constitute per se irreparable injury"); *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689 (7th Cir.1975)....

> One reason for such stringent protection of First Amendment rights certainly is the intangible nature or the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.... This does not mean, however, that only if a plaintiff can prove actual,

current chill can he prove irreparable injury. On the contrary, direct retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. at 283–87, 97 S.Ct. at 574–76; *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

*Cate v. Oldham,* 707 F.2d 1176, 1188–89 (11th Cir.1983); *accord Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 4 (1st Cir.1987); *Mariani Giron v. Acevedo Ruiz,* 834 F.2d 238, 239 (1st Cir.1987); *Branch v. Federal Communications Comm'n,* 824 F.2d 37, 40 (D.C.Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Jimenez–Fuentes v. Torres Gaztambide,* 807 F.2d 230, 234 (1st Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Shondel v. McDermott,* 775 F.2d 859, 866–67 (7th Cir.1985); *Stegmaier v. Trammell,* 597 F.2d 1027, 1032 n. 4 (5th Cir.1979); *Johnson v. Bergland,* 586 F.2d 993, 995 (4th Cir.1978); *compare In re School Asbestos Litigation (School Dist. of Lancaster Manheim Township School Dist. v. Lake Asbestos of Quebec, Ltd.),* 842 F.2d 671, 679 (3rd Cir.1988); *In re Providence Journal Co.,* 820 F.2d 1342, 1352 (1st Cir.1986), *modified en banc on other grounds,* 820 F.2d 1354 (1st Cir.1987), *cert. dismissed for lack of jurisdiction,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988); *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1554 (11th Cir.1987); *Parents Ass'n of Public School 16 v. Quinones,* 803 F.2d 1235, 1242 (2nd Cir.1986); *American Civil Liberties Union of Illinois v. City of St. Charles,* 794 F.2d 265, 274 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986); *San Diego Committee Against Registration & the Draft (CARD) v. Governing Bd. of Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir.1986); *Lydo Enter., Inc. v. City of Las Vegas,* 745 F.2d 1211, 1214 (9th Cir.1984); *Libertarian Party of Indiana v. Packard,* 741 F.2d 981, 985 (7th Cir.1984); *Ebel v. City of Corona,* 698 F.2d 390, 393 (9th Cir.1983); *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981); *Community Communications Co., Inc. v. City of Boulder,* 660 F.2d 1370, 1376 (10th Cir.1981), *cert. dismissed by agreement of parties,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *Florida Businessmen for Free Enter. v. City of Hollywood,* 648 F.2d 956, 958 (5th Cir. Unit B June 1981); *cf. Lowary v. Lexington Local Bd. of Educ.,* 854 F.2d 131 (6th Cir.1988); *Damiano v. Matish,* 830 F.2d 1363 (6th Cir.1987); *Tierney v. City of Toledo,* 824 F.2d 1497, 1507 (6th Cir.1987).

In its order granting injunctive relief, the district court, acting *sua sponte,* converted this proceeding into a class action and mandated the defendants to draft and submit plans providing for the training of the Disciplinary Board and the inmate advisors. Because these issues were not joined by the pleadings, demonstrated by the evidence or incorporated into appellees' request for relief, the appellants have challenged the propriety of this part of the district court's order.

▪ The appellees have argued, in this appellate review, that orders to submit remedial plans are not, strictly speaking, injunctive relief, and that as a result this court is without jurisdiction under 28 U.S.C. § 1292(a)(1) to review this part of the district court's order.[5] "This court has consistently rejected attempts to obtain review of orders requiring the submission of remedial plans." *Groseclose v. Dutton,*

---

**5.** It is undisputed that because the district court has granted only preliminary relief and has not granted a final judgment in this action, the only basis for the jurisdiction of this court on appeal lies under 28 U.S.C. § 1292(a)(1), which states:

> (a) The courts of appeals shall have jurisdiction of appeals from:

> Interlocutory orders of the district courts of the United States, ... granting ... injunctions....

> 28 U.S.C. § 1292(a)(1).

788 F.2d 356, 359 (6th Cir.1986) (per curiam) (citations omitted); *see also Bradley v. Milliken,* 468 F.2d 902 (6th Cir.), *cert. denied,* 409 U.S. 844, 93 S.Ct. 45, 34 L.Ed.2d 83 (1972); *Reed v. Rhodes,* 549 F.2d 1050 (6th Cir.1976); *Sykes v. Krieger,* 551 F.2d 689 (6th Cir.1976).

Although an order requiring a party to litigation to submit a proposed remedial plan is not itself an injunctive order appealable under 28 U.S.C.A. § 1292(a)(1), where an order issued by a district court also incorporates injunctive measures which are properly appealable under § 1292(a)(1), the court of appeals has jurisdiction to review the entire order of the district court including the requirement that a defendant submit a remedial plan.

It is elementary that an appeal from the denial of injunctive relief brings the whole record before the appellate court and that the "scope of review may extend further [than the immediate question on which the District Court ruled] to allow disposition of all matters appropriately raised by the record, including; entry of final judgment." .... We have "jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the Court of Appeals without further trial court development."

*Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n,* 717 F.2d 963, 964 (6th Cir.1983) (quoting 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3921, at 17 (1977); *id.* at 3 (Supp.1988)), *order denying petition for rehearing en banc from* 710 F.2d 1165 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *accord Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 585, 72 S.Ct. 863, 865–66, 96 L.Ed. 1153 (1952); *Highland Avenue & Belt R.R. Co. v. Columbian Equipment Co.,* 168 U.S. 627, 630, 18 S.Ct. 240, 241, 42 L.Ed. 605 (1898); *Smith v. Vulcan Iron Works,* 165 U.S. 518, 525, 17 S.Ct. 407, 41 L.Ed. 810 (1897); *see also Kohn v. American Metal Climax, Inc.* 458 F.2d 255, 262 (3rd Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972); *Allstate Ins. Co. v. McNeill,* 382 F.2d 84, 87 (4th Cir.1967), *cert. denied sub nom. Murray v. McNeil,* 392 U.S. 931, 88 S.Ct. 2290, 20 L.Ed.2d 1390 (1968); *McNally v. Pulitzer Publ. Co.,* 532 F.2d 69 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Sierra Club v. Marsh,* 816 F.2d 1376, 1382 (9th Cir.1987); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 315 (D.C. Cir.1985); *King Instrument Corp. v. Otari Corp.* 814 F.2d 1560, 1562 (Fed.Cir.1987).

"Thus, as these cases indicate, if a district court's ruling rests solely on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance, that ruling may be reviewed even though the appeal is from the entry of a preliminary injunction." *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 757, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986). Because the district court did award injunctive relief in the order from which the appellants perfected an appeal, this court's jurisdiction has been properly invoked to consider all issues joined in that order, including the mandate that the appellants submit a remedial plan to provide for the training of the Disciplinary Board and inmate advisors and the propriety of the court's class action certification.

In the instant case, the appellees' complaint was limited to an allegation charging personal constitutional infringements arising as a result of the prison administration's refusal to reappoint them as inmate advisors because of their complaints against Hindman, the Chairman of the Board. Since the appellees in this action were already experienced inmate advisors, the district court's order, requiring the defendants to implement a training procedure for *new* inmate advisors, would not have affected the individual rights of the named appellees in this action. Consequently, any remedial plan ordered by the district court concerning the training of the Disciplinary Board members and inmate advisors must have related to violations, if any existed, of other prisoners' rights and not those of the appellees in this action.

■ Precedent dictates that a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional rights of other prisoners.

> The essence of plaintiff's claim ... was that bad prison conditions in general might affect the constitutional rights of Oklahoma State Penitentiary inmates. The general rule, however, is that a plaintiff must assert his own constitutional rights.

*Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986); *accord Adams,* 784 F.2d 1080 ("In a non-class action context a prisoner has no standing to litigate another prisoner's claim of denial of access to the courts."). *See generally McGowan v. Maryland,* 366 U.S. 420, 429, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522–23, 4 L.Ed.2d 524 (1961); *Ballard v. Stanton,* 833 F.2d 593, 594 (6th Cir.1987).

"To maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity." *Wilson v. Zarhadnick,* 534 F.2d 55, 57 (5th Cir.1976) (citations omitted); *accord Lusted v. San Antonio Indep. School Dist.,* 741 F.2d 817, 821 (5th Cir.1984) ("[C]lass action relief must be predicated upon a proper class action complaint satisfying all the requirements of Rule 23.") (quoting *Danner v. Phillips Pe-*

*troleum Co.,* 447 F.2d 159, 164 n. 10 (5th Cir.1971)). In the case at bar, the appellees commenced this action in their individual capacities; the complaint contained no request for class certification or classwide relief.[6] *Compare Lusted,* 741 F.2d at 821 ("[Plaintiff's] suit was brought as an individual action. Her complaint neither showed nor alleged that the suit met the prerequisites of a class action as specified by Rule 23, ... and the complaint prayed for relief solely on [plaintiff's] behalf."); *Wilson,* 534 F.2d at 57 ("In neither the convict's letter nor in the complaint as filed is there any allegation that class action relief is desired...."). Instead, it was the trial court, acting on its own initiative, that certified this case as a class action.

Although a trial "court may suggest that relief to a definable class would be appropriate, ... it cannot convert an individual action into a class action on its own motion." 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1785, at 92; *see also Katz v. Carte Blanche Corp.,* 496 F.2d 747, 760 (3rd Cir.1974) ("[T]he plaintiff, not the judicial system, controls whether or not to ask for class action treatment."), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Nance v. Union Carbide Corp., Consumer Prods. Div.,* 540 F.2d 718, 722 n. 2 (4th Cir.1976) (same), *vacated on other grounds,* 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977). "The grant, *sua sponte,* of class action relief when it is neither requested nor specified, is an obvi-

---

6. Because the complaint in the case at bar alleged constitutional violations *only* as to the specifically named prison inmates, and requested relief *only* as to those individuals, it cannot be suggested that the appellants in the instant appeal had informally or impliedly sought to pursue this matter as a class action. Compare, for example, *Lusted v. San Antonio Indep. School Dist.,* 741 F.2d 817, 821 (5th Cir.1984) ("Nor is there any indication in the record that this case was tried implicitly as a class action, and 'that all parties to the action knew of its class nature and acquiesced in it.'") (quoting *Bing v. Roadway Express, Inc.,* 485 F.2d 441, 446 (5th Cir.1973)) (footnote omitted), in which the court of appeals affirmed the denial of class certification, with such cases as *Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 565 F.2d 1364 (6th Cir.1977) ("The action itself was

unquestionably filed as a class action and proceeded to trial on that basis."), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978) and *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.) ("There there is no question but that the suit was filed as a class action and it proceeded to trial as a class action."), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976), wherein the appellate court concluded that "the action was not improperly treated as a class action" because "all the parties [had] proceeded on the assumption that the action was a class action." *Nance v. Union Carbide Corp., Consumer Prods. Div.,* 540 F.2d 718, 724 (4th Cir.1976) (quoting *Senter,* 532 F.2d at 522 (citing *Bing,* 485 F.2d at 446–47)), *vacated on other grounds,* 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977).

ous error." *Wilson*, 534 F.2d at 57; *Walker v. Haynes*, 659 F.2d 46, 48 (5th Cir. Unit A Oct. 1981) ("[I]t is obvious error to certify a class when class certification has not been requested."); *compare Lusted*, 741 F.2d at 821 ("[Plaintiff's] failure to seek class relief in her complaint ... effectively 'precluded any class certification....'"") (quoting *Nance*, 540 F.2d at 725 (quoting *Pertiz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir.1975))). In the instant case, the trial court's *sua sponte* action in mandating the appellants to submit a remedial training plan for Disciplinary Board members and inmate advisors and in certifying the proceeding as a class action constituted error, particularly under circumstances where those issues were not joined by the complaint nor developed by the proof and, consequently, that part of the district court's order must be vacated. *See Board of School Commissioners v. Jacobs*, 420 U.S. 128, 130, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975); *Shipp v. Memphis Area Office, Tenn. Dep't of Employment Sec.*, 581 F.2d 1167, 1172–73 (6th Cir.1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979).

Accordingly, for the reasons set forth herein, that part of the district court's order granting preliminary injunctive relief reinstating the appellees to their former positions as inmate advisors pending final disposition of their underlying claims is AFFIRMED, and that part of the district court's order certifying a class action requiring the appellants to submit a remedial plan for the training of Disciplinary Board members and prison inmate advisors is hereby VACATED.

ZATKOFF, District Judge, dissenting.

I concur in the majority decision to vacate that portion of the district court's order certifying a class action and requiring appellants to submit a remedial plan for the training of Disciplinary Board members and prison inmate advisors. I write to set forth my understanding of the First Amendment issue argued and ruled upon by the district court and briefed and presented to this court. I dissent from the majority decision to address appellees'

claim as a free speech issue. The magistrate and the district court based their opinions on a probable violation of the First Amendment right of access to the courts. Appellees' brief filed with this court does not set forth a free speech issue. Finding that the right of access to the courts is not implicated in this case, I would also vacate the district court's grant of injunctive relief.

## I. Right of Access to the Courts

The First Amendment guarantees that all persons shall have access to the courts. In a prison context, the right of access to the courts is the right to prepare and file pleadings with a court which fairly represents the inmate's claim. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72, 83 (1977). In the absence of any meaningful alternative, inmates must be permitted to receive from other inmates assistance in preparing their court documents. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

In this case, the district court found appellees had a constitutional right to provide legal advice. This concept has been soundly rejected by other jurisdictions. In *Adams v. James*, 784 F.2d 1077 (11th Cir. 1986), the Eleventh Circuit held that although a prisoner has a right to receive from other inmates assistance and advice on legal matters, trained inmate "law clerks" have no constitutional right to provide legal assistance to prisoners. Similarly in *Smith v. Halford*, 570 F.Supp. 1187, 1194 (D.Kan.1983), the court noted that no authority existed for the creation of "a [constitutional] right, vested in jailhouse lawyers, to provide legal assistance to others." *But see Gometz v. Henman*, 807 F.2d 113, 115 (7th Cir.1986) (leaving unanswered the question of whether a jailhouse lawyer has standing to assert the constitutional rights of the prisoner he desires to assist).

I find appellees have no constitutional right to provide legal assistance to other prisoners. A litigant may present only his

own rights as the bases of relief. In order for a third party to assert another's constitutional rights, there must be some impediment to first party litigation. *See Singleton v. Wulff*, 428 U.S. 106, 114–116, 96 S.Ct. 2868, 2874–2875, 49 L.Ed.2d 826 (1976) (Stevens, J., plurality opinion). No impediment to first party litigation is alleged by appellees; the inmates to whom appellees provided assistance are capable of pursuing their own claims.

Assuming arguendo appellees had standing to assert the claims of their inmate clients, the right of access to the courts is not implicated in this case. No inmate has ever been denied access to an inmate advisor as a result of the decision not to reappoint the appellees to their positions. New inmate advisors were appointed to serve in the positions previously held by the appellees. Just as an indigent defendant to a criminal trial does not have a constitutional right to a lawyer of his choice, the prison inmates whom appellees represented are not entitled to the assistance of a particular legal advisor. *Cf., Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (finding indigent criminal defendant merely entitled to adequate representation).

Moreover, the right of access to the courts guarantees an inmate access to a court of law for the primary purpose of filing habeas corpus petitions and civil rights complaints. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). By allowing inmates access to the courts to pursue these types of legal proceedings, inmates are provided an avenue for the protection of their constitutional rights. *Id.* The right of access to the courts does not guarantee an inmate a right to counsel in internal prison administrative proceedings. The assistance provided inmates by appellees was limited to matters involving internal prison disciplinary action before the prison disciplinary board. Appellees did not assist in the preparation

of legal memoranda for filing with the courts. Therefore, appellees' assistance is not guaranteed by the First Amendment right of access to the courts.

## II. Right to Free Speech

The majority state:

the appellees commenced the instant action ... [asserting] First Amendment free speech infringements alleging that appellants had conspired to and had deprived them of their constitutional rights to continue to serve as inmate advisors ... in retaliation for complaints filed with the Warden concerning the performance of David Hindman as Chairman of the Disciplinary Board.

Review of appellees' complaint reveals no express claim of an abridgement of free speech by appellants.[1] Reviewing the appellees' *pro se* complaint with a measure of leniency, appellees' complaint may, arguably, be broad enough to encompass a free speech claim. The district court, however, did not grant injunctive relief on such a theory. I believe it is inappropriate to rule on such a theory without the matter being presented to the district court.

A similar issue was encountered by the Eleventh Circuit in *Adams v. James*, 784 F.2d 1077 (11th Cir.1986). In *Adams*, inmates who were terminated from law clerk positions instituted a lawsuit to be reinstated. The inmate-law clerks alleged their termination violated their inmate-clients' First Amendment right of access to the courts. The district court granted summary judgment in favor of the prison administration. On appeal, the inmate-law clerks argued that they raised before the district court claims implicating their own First Amendment rights rather than the rights of their inmate-clients. The inmate-law clerks argued that the district court misunderstood their position and, as a consequence, they were denied relief. The Elev-

---

1. The First Amendment right of free speech is not mentioned anywhere in appellees' complaint. Moreover, the complaint alleges in no uncertain terms that appellees were terminated because they were effective legal advocates, not

because they registered complaints about Disciplinary Board Chairman Hindman. *See* Complaint § 5, para. 24–27; § 6, para. 4; Joint Appendix pp. 16–18.

enth Circuit only addressed the claim ruled upon by the district court, stating:

> [i]t is important that we review the case presented to the district court rather than a better case fashioned after the district court's order.

784 F.2d at 1080. Likewise, in the instant case, I would review only those matters ruled upon by the district court.

Because the majority discuss the free speech issue, I must express my view that injunctive relief is nonetheless inappropriate because there is no showing of irreparable harm.

The majority relies upon *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), to support the proposition that any First Amendment infringement, no matter how minimal, constitutes irreparable injury sufficient to justify injunctive relief. In *Elrod*, Justice Brennan, who authored the plurality opinion, stated:

> It is clear therefore that First Amendment interests were *either threatened or in fact being impaired at the time relief was sought*. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.... *Since such injury was both threatened and occurring at the time of respondents' motion* and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might prop-

erly have held that the District Court abused its discretion in denying preliminary injunctive relief. (Citations omitted) (emphasis added).

Clearly, the *Elrod* Court contemplated that the First Amendment infringement would either be threatened or occurring at the time relief is sought before the injury could be considered irreparable. *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir.1988) (finding chilling of speech stems not from discharge but from threat of discharge); *American Postal Workers Union v. United States Postal Service*, 766 F.2d 715, 722 (2d Cir. 1985) (holding employee's right to free speech not threatened subsequent to discharge), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986); *Kendzierski v. Corey*, 615 F.Supp. 550, 552 (N.D. Ind.1985); *Savage v. Commonwealth of Pennsylvania*, 475 F.Supp. 524, 532 (E.D. Pa.1979), *aff'd*. 620 F.2d 289 (3rd Cir.1980).

In this case, the First Amendment violation is a past act which is no longer a threat to appellees' right to free speech. Appellees may now lodge as many complaints as they wish against disciplinary board members.

Since reinstatement and money damages would make appellees whole subsequent to a trial on the merits, I would find appellees failed to demonstrate irreparable harm.[2] Accordingly, to the extent that this case is

---

**2.** It is the very nature of prisons to deprive persons of their liberty. Incarcerated persons retain minimal liberty interests. Prison authorities may threaten the loss of those liberty interests retained by inmates to ensure conformity with prison rules, regulations and policies. The threat of additional deprivations of liberty, however, often has little deterrent effect since many inmates perceive they have nothing left to lose. This situation creates security risks in prisons which are unparalleled when compared to any other facet of society. Because of the nature of prisons and recognizing the grave risks associated with the day-to-day operation of prisons, the Supreme Court has granted prison administrators great deference in the execution of their duties. See *e.g., Kentucky Dept. of Corrections v. Thompson*, 490 U.S. ——, 109 S.Ct. 1904, 1908–1909, 104 L.Ed.2d 506 (1989) (finding that absent state regulation containing explicitly mandatory language to limit discretion, prison administrators should be afforded vast discretion in the implementation of prison regulations and

policies); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251, 260–261 (1986) (holding courts must consider nature of prison setting to prevent prison official's conduct from being subject to unreasonable *post hoc* judicial second guessing); *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1989) (stating that "Prison administrators ... should be accorded wide-range deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security"); *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (finding policies and goals of correction system may justify restrictions on prisoner's First Amendment rights).

I believe it is inappropriate to grant injunctive relief in a prison when the injury to the plaintiff is reparable. To hold otherwise unduly restricts the discretion of prison officials and subjects prison officials to premature judicial oversight.

addressed as a free speech claim, I would nonetheless deny injunctive relief.

### III. Conclusion

Finding no violation of appellees' right of access to the courts, and further finding it inappropriate to address matters not properly presented in the district court, I would vacate the district court's order in its entirety.