**Marc E. DANN, et al., Plaintiffs,**

v.

**J. Kenneth BLACKWELL, et al., Defendants.**

No. C2–00–092.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 3, 2000.

---

Donald Joseph McTigue, Columbus, OH, for Plaintiffs.

Arthur James Marziale, Jr., Darrell M. Pierre, Jr., Ohio Atty. General, Chief Counsel's Staff Section, Columbus, OH, for Defendants.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of Plaintiffs' Motion for a Preliminary Injunction. Plaintiff, Marc E. Dann ("Dann"), is a candidate in the March 7, 2000 Democratic Party primary for the office of State Senate. Dann, together with Plaintiff, Marc Dann for Senate, his campaign committee, seeks to enjoin the Defendant, J. Kenneth Blackwell, the Ohio Secretary of State,[1] from enforcing Ohio Revised Code ("O.R.C.") § 3517.103(C).

Plaintiffs bring a series of constitutional challenges to O.R.C. § 3517.103(C), the operation of which they contend prevents Dann from contributing more than $25,000 to his own campaign. Because the issues raised in the Motion for a Preliminary Injunction may substantially effect the conduct of both Dann and his four primary opponents in conducting their campaigns for public office, the Court considers these matters on an expedited basis. A hearing on the Motion was held on February 3, 2000. For the reasons that follow, Plaintiffs' Motion for a Preliminary Injunction is GRANTED in part.

### I.

In 1997, the Ohio General Assembly enacted Amended Substitute Senate Bill No. 116, which, *inter alia*, included two versions of O.R.C. § 3517.103, the constitutionality of which Plaintiffs now challenge. The legislation represented a major re-

---

**1.** Under O.R.C. § 3501.04, the Secretary of State is the chief elections officer for the State of Ohio.

form of Ohio election law and included several prohibitions on campaign financing relevant to the issues before the Court.

Prior to the passage of Senate Bill 8 in 1995, Ohio law imposed no limits on the size of contributions made to political campaigns. The current Ohio law now limits the amounts that individuals, political parties, and political action committees may contribute to a candidate.[2] O.R.C. § 3517.102(B)(1) now provides:

> No individual shall make a contribution or contributions aggregating more than:
>
> . . .
>
> (b) Two thousand five hundred dollars to the campaign committee of any one senate candidate in a primary election period or in a general election period.

The legislation imposed limitations on contributions, but did not otherwise restrict the amounts which a candidate could expend on a campaign for office. This distinction is not coincidental. It is clear that the Ohio legislature was aware that the same distinction has been drawn by the United States Supreme Court. As recently explained in *Nixon v. Shrink Missouri Gov't PAC,* —— U.S. ——, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000):

> While an expenditure limit "precludes most associations from effectively amplifying the voice of their adherents" . . . the contributions limits "leave the contributor free to become a member of any political association and to assist personally in the association's efforts on behalf of candidates . . ." While we did not then say so in so many words that different standards might govern expenditure and contribution limits affecting associational rights, we have since then said so explicitly in *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 479

U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986).

*Id.* at 903 (quoting *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)).

In enacting Amended Substitute Senate Bill No. 116, it is also clear that the Ohio General Assembly was mindful of the fact that in the seminal case of *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court struck down as unconstitutional federal legislation limiting the amounts of money the candidate could contribute to his or her own campaign. Amended Substitute Senate Bill No. 116 contains no limit on the amount which a candidate may contribute to the campaign.

The legislation does, however, require any candidate running for the State Senate or House to file what is termed a "personal funds notice" with the Ohio Secretary of State, if such candidate's campaign committee has received or expects to receive personal funds in excess of $25,000.00 for either the primary or general election campaigns.[3] O.R.C. § 3517.103(C)(2). Personal funds include amounts contributed by the candidate, the candidates spouse, children, grandparents, and in-laws. O.R.C. § 3517.103.

If such personal funds notice is served by a candidate, an opposing candidate may in turn file a declaration that the campaign committee will accept contributions over and above the otherwise applicable limits on contributions from persons or entities other than the candidate. O.R.C. § 3517.103(D)(1). In essence, the legislative scheme provides that if one candidate contributes to the campaign personal funds in excess of $25,000, an opponent may opt

---

**2.** These limits, which apply separately to primary and general election campaigns, are $2,500 for an individual, a political action committee, a political party, and another candidate's campaign committee. O.R.C. § 3517.102(B)(1) –(7).

**3.** The amount which triggers the requirement for a personal funds notice is $100,000 in the primary and $150,000 in the general election campaigns for statewide offices. O.R.C. § 3517.103(C)(1).

to be released from the $2,500 limit placed on campaign contributions.[4]

Failure to timely file a personal funds notice carries severe consequences. Under O.R.C. § 3517.103(E)(4), a legislative candidate who fails to timely file such notice and contributes personal funds in excess of $25,000 "shall forfeit the candidate's nomination, if the candidate was nominated, or the office to which the candidate was elected, if the candidate was elected to office."[5]

As originally enacted in 1997, O.R.C. § 3517.103(C)(3) required a personal funds notice to be filed not later than the earlier of the following two periods: (1) 120 days before the primary or general election; (2) two business days after the candidate's campaign committee receives or expends personal funds in excess of $25,000. The same Act of the legislature passed in 1997 provided that the 120 day period would be in effect through December 31, 1999; thereafter, the Act provided that, effective January 1, 2000, the 120 day period would be shortened to 60 days. The version of O.R.C. § 3517.103(G) which included the 120 day period expressly provided that "this is an interim section effective until January 1, 2000." The permanent version of O.R.C. § 3517.103, which would have become effective on January 1, 2000, contained the 60 day notice period.

Before the permanent provisions became effective, the General Assembly enacted on December 22, 1999—76 days before the March 7, 2000 primary—yet another version of O.R.C. § 3517.103(C)(3). (Am.Sub. H.B. 119.) The current version, passed as an emergency measure and effective as of December 22, 1999, requires a candidate to file a personal funds notice at least 120 days prior to a primary or general election.

Immediately prior to the passage of Amended Substitute House Bill 119, a legislative candidate could comply with Ohio law applicable to the March 7, 2000 primary by contributing personal funds in excess of $25,000 and filing a personal funds notice on or before January 7, 2000. On December 22, 1999, however, the General Assembly changed state law by expending the minimum period of notification to 120 days, thereby foreclosing the filing of a timely personal funds notice, with respect to the March 7, 2000 primary, by any candidate relying upon the 60 day period set forth in the prior version of O.R.C. § 3517.103(C)(3).

### III.

On January 6, 2000, Plaintiff Dann sent to the Trumbull County Board of Elections a notice of personal funds.[6] After receiving such notice from the Trumbull County Board of Elections, the Ohio Secretary of State advised Dann in writing that the notice was late. To comply with the amended version of O.R.C. § 3517.103(C), according to the Secretary of State, the notice had to be filed by November 8, 1999, or, in other words, 120 days before the March 7, 2000 primary and also before passage of Amended Substitute House Bill 119. The letter also advised that if Dann expended more than $25,000 of personal funds, the Secretary would initiate a complaint with the Ohio Elections Committee,

---

4. In resolving the pending Motion for a Preliminary Injunction on an expedited basis, the Court does not address whether the entire scheme passes constitutional muster. Further, the parties have not briefed the issue.

5. The Ohio Elections Commission, a state agency which enforces certain Ohio election laws, including O.R.C. § 3517.103, has held that forfeiture of nomination or office may not be the only penalties which may be imposed upon a candidate in violation of O.R.C.

§ 3517.103(E)(4). The fact that other sanctions, such as fines, may be imposed rather than forfeiture of office, does not change the constitutional analysis.

6. Ohio law requires the notice to be sent to same County Board of Elections in which the candidate's statement of contributions and expenditures must be filed. The County Board of Elections then notifies the Ohio Secretary of State. O.R.C. § 3517.103(C)(3)(b).

alleging a violation of O.R.C. § 3517.103(E).

Dann contends that the Secretary of State is preventing him from exercising his right of freedom of expression under the First and Fourteenth Amendments to the United States Constitution.[7] Dann further contends that O.R.C. § 3517.103(C)(3)(a) is unconstitutional on its face and as applied in this case. Finally, Dann alleges that the Defendants are acting in violation of Plaintiffs' right to freedom and association under Article I. § 16 of the Ohio Constitution.

### IV.

Plaintiffs seek to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers upon the district courts authority to hear claims arising under federal law. Specifically, Plaintiffs bring Claims One through Seven pursuant to 42 U.S.C. § 1983, which states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Plaintiffs seek a declaration that certain provisions of O.R.C. § 3517.103 are unconstitutional and an injunction restraining the Defendants from taking any action against the Plaintiffs based upon such unconstitutional statute. No claim for damages is asserted.

■ In essence, Plaintiffs seek to restrain the Ohio Secretary of State from allegedly enforcing what the Plaintiffs contend to be an unconstitutional statute. In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court recognized that federal courts have jurisdiction to consider claims brought by a citizen alleging that a state official is acting in violation of, or is about to violate, federal law. The only relief available, however, in an *Ex parte Young* action is injunctive relief, rather than damages. The Court finds that Claims One through Seven brought by the Plaintiffs are properly within this Court's jurisdiction under the *Ex parte Young* doctrine.

Claims Eight through Ten of the Complaint allege that the Defendants are acting in violation of various provisions of the Ohio Constitution. Plaintiffs assert that this Court has supplemental jurisdiction under 28 U.S.C. § 1367, since such claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a).

This Court's supplemental jurisdiction, however, does not provide jurisdiction otherwise removed by operation of the Eleventh Amendment which states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

---

7. The First Amendment states:
   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
   The Fourteenth Amendment states, in part:
   All persons born or naturalized in the United States, and subject to the jurisdiction

thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

by Citizens or Subjects of any Foreign State.

U.S. Const.Amend. XI. In *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the United States Supreme Court reasoned that "neither pendent [now termed 'supplemental'] jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."

■ Consequently, this Court holds that it has no jurisdiction to determine whether, as asserted in claims Eight through Ten of the Complaint, Defendants are acting, or are about to act, in violation of the Ohio Constitution.

### V.

■ In considering a request for a preliminary injunction, this Court must consider four factors: (1) the Plaintiffs' likelihood of success upon the merits; (2) whether the Plaintiffs will suffer irreparable injury if the request for preliminary injunction is denied; (3) whether the public interest will be served by the issuance of an injunction; and (4) whether third-parties will suffer substantial harm if the injunction is issued. *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985). The formula is not to be applied in a mechanical fashion. Instead, the Court must consider and weigh each of the four criteria. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985).

The Court will first address when Plaintiffs have demonstrated a likelihood of success on the merits of their claims. Dann alleges that the Ohio Secretary of State is attempting to enforce an Ohio law which unconstitutionally restrains him from contributing more than $25,000 of his personal funds to his own campaign for a seat in the Ohio Senate.

The Supreme Court has held that First Amendment guarantee of freedom of expression prohibits a restriction on a candidate's funding of his or her own campaign.

In *Buckley v. Valeo,* the Supreme Court reviewed various provisions of the 1974 Federal Election Campaign Act, 2 U.S.C. § 401, *et. seq.,* including a limitation on the use of personal funds in federal elections. Candidates for the United States Senate were limited to expending no more than $50,000 of personal funds, while candidates for the House of Representatives were limited in most instances to $25,000.[8]

The Supreme Court held:

The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known....

The primary governmental interest served by the Act, the prevention of actual and apparent corruption of the political process, does not support the limitation on the candidate's expenditure of his own personal funds.

*Buckley v. Valeo,* 424 U.S. at 52–53, 96 S.Ct. 612. The Supreme Court concluded that the restriction on a candidate's personal expenditures was unconstitutional.

On at least two recent occasions, the Court of Appeals for the Sixth Circuit has invalidated state or local laws limiting the amount of personal funds which a candidate may expend on a campaign. In *Gable v. Patton,* 142 F.3d 940, 951 (6th Cir.1998), the court expressly agreed with the holding of the district court that "there can be no doubt that a candidate cannot be restricted from contributing to and spending for his own candidacy." Consequently, the Court found unconstitutional a Kentucky statute prohibiting the making of personal contributions to a candidate's own campaign during the twenty-eight days immediately prior to the election.

**8.** If a House district encompassed an entire    state, the amount was raised to $50,000.

Similarly, in *Suster v. Marshall,* 149 F.3d 523 (6th Cir.1998), the Court of Appeals invalidated Ohio judicial canons which limited overall expenditures made by judicial campaigns. The canons provided that a candidate for county judicial office could not expend more than $75,000, and no more than $18,750 of such amount could be spent in the primary election. These amounts included funds received from contributors as well as the candidate. Although the canons did not expressly limit the use of a candidate's personal funds, the court noted that the overall cap by itself limited the amount of personal funds a candidate could use in a campaign for judicial office. The court noted that "unlike a campaign contributor, a candidate's own money is not traded for possible political favors." *Id.* at 532.

The court further noted in *Suster* that states have no greater power to restrict the First Amendment rights guaranteed to its citizens than that possessed by Congress. *Id.* at 529. It is beyond dispute that following *Buckley v. Valeo,* a limitation placed on a candidate's use of his or her own funds in advance of a candidacy is unconstitutional.

Plaintiff claims that O.R.C. § 3517.103(C)(3)(a) is unconstitutional both on its face and as applied. A plaintiff bears a much heavier burden in challenging a statute as unconstitutional on its face. In *United States v. Salerno,* the Supreme Court noted:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists which under the Act would be valid. The fact that [a statute or court rule] might operate unconstitu-

tionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.[9]

481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Reno v. Flores,* 507 U.S. 292, 301, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (holding that a plaintiff mounting a facial challenge show "no set of circumstances" under which the statute would be valid).

In this case, given the date of enactment of O.R.C. § 3517.103(C), coupled with the date of the March 7, 2000 election, the sharp analytical distinctions drawn between facial versus as-applied constitutional challenges are of no importance. On its face, O.R.C. § 3517.103(C)(3)(a) is unconstitutional as applied to the March 7, 2000 election only. The statute is also unconstitutional as applied to Plaintiffs.

*Buckley* definitively holds that a candidate has a First Amendment right to contribute unlimited amounts of personal funds to his or her campaign. The effect of the challenged legislation is clear. As of December 21, 1999, Plaintiff Dann had, and continues to have, a constitutional right to make unlimited amounts of contributions to his campaign. As of that same date, with respect to the March 7, 2000 primary, the State of Ohio required a 60 day notification, if he elected to personally contribute in excess of $25,000.[10] One day later, exactly 76 days before the March 7, 2000 primary, the General Assembly changed the notification window to 120 days before the election, meaning to a date

---

**9.** *Salerno* has not been applied in recent abortion decisions, according to *Women's Medical Professional Corp. v. Voinovich,* 130 F.3d 187 (6th Cir.1997). The Sixth Circuit has looked to whether a particular statute regulating abortion will "constitute an undue burden" on abortion, rather than the *Salerno* test that under no circumstances could the statute be valid. *Id.* at 195. As will be noted below, the

challenged statute herein cannot satisfy either standard.

**10.** This Court again emphasizes that it has not been called upon and it does not determine whether such state imposed limitation on a First Amendment right is constitutional.

that had already passed.[11]

Regardless of whether the legislature intended such a result, the reality is that Dann has been completely deprived of his constitutional right to contribute to his own campaign in excess of $25,000 by operation of amended O.R.C. § 3517.103(C)(3)(a). The Court concludes that Dann has demonstrated a substantial likelihood of success on the merits.

Plaintiff also makes a strong showing that he will suffer irreparable harm if immediate injunctive relief is not available. It has long been recognized that "[t]he loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). As stated in *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989), "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."

Dann seeks election to a four year term as a State Senator. The election is only thirty-three days from the date of the hearing on his motion. Because the penalty for failing to file a timely personal funds notice is forfeiture of the party nomination or office, Dann's right to contribute to his own fund has been effectively prohibited. In the absence of injunctive relief, the Court concludes that Dann will suffer irreparable harm.

The Court also concludes that it is in the public interest to prevent the operation of a law which unconstitutionally prohibits a candidate's use of personal funds in excess of $25,000. As the Supreme Court noted in *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley,* 454 U.S. 290, 291, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), there is no public interest in enforcing a law that "curtail[s] debate and discussion."

More problematic is the requirement that this Court consider whether an injunction will harm third-parties. Dann is one of five Democratic party candidates running for the office of State Senator in the 32d District. Ohio law, before and after enactment of Amended Substitute House Bill 119, provides potentially substantial benefits to the opponents of a candidate using excess personal funds. The other candidates may, within 30 days following an opponent's filing of a personal funds notice, elect to submit a declaration of no limits, and receive contributions in excess of $2,500 per donor. Such large contributions would otherwise be unlawful had an opponent not elected to inject personal funds in excess of $25,000 into the campaign. An injunction which ignored this important right of Dann's opponents would unfairly affect his opponents and would eviscerate the campaign finance reform enacted by the General Assembly.

In light of these considerations, and with deference to policy decisions made by the General Assembly, the Court is inclined to issue an injunction which protects the constitutional rights of Dann to contribute to his own campaign as well as the statutory right of his opponents to exceed the caps on contributions. The imposition of a newly enacted 120 day notification period on the 76th day before the March 7, 2000 primary is unconstitutional. The Court enjoins the Secretary of State from enforcing such time limits; the Court instead directs him to enforce the prior statutory period of 60 days for the March 7, 2000 primary. As to subsequent elections after March 7, 2000, the Secretary of State may enforce the 120 day period.

Further, to minimize the effect of this Order on third-parties and to effectuate as much as possible those provisions of Ohio law not found to be in violation of the

11. Both the 60 and 120 day notifications serve to require a candidate to disclose the intent to use excess personal funds. Because such disclosure directly benefits the oppo-

nent, by lifting limits on the amount of contributions, the legislature as well as this Court must assume that a rational candidate would not file an *early* personal funds notice.

Constitution, the Court orders that any of Dann's opponents may file a timely declaration of no limits, pursuant to O.R.C. § 3517.103(D)(1), within 30 days from the date of this Order, in compliance with O.R.C. § 3517.103(D)(2).

## VI.

In light of the foregoing, it is therefore **ORDERED** and **DECREED** that to the extent Amended Substitute House Bill 119 modified O.R.C. § 3517.103(C)(3)(a) to impose a minimum notification period of 120 days, such provisions are unconstitutional with respect to the March 7, 2000 election only. The Ohio Secretary of State, his employees and agents, are preliminarily enjoined from enforcement of such 120 day provisions with respect to the March 7, 2000 election and from filing a complaint against Plaintiff Dann or the entity, Plaintiff Mark Dann for Senate, with the Ohio Elections Commission for violations of the same provisions of Ohio law. The Ohio Secretary of State is further **ORDERED** to permit Plaintiff Dann's primary opponents to file valid declarations of no limits under O.R.C. § 3517.103(D)(1) within thirty days from the date of this Order.

All subject to further Order of this Court.

**IT IS SO ORDERED.**